

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00106-CR

| | | |
|---|---|---|
| Lecoreyeon Daseon Taylor | § | From County Criminal Court No. 1 |
| | § | of Denton County (CR-2011-06645-A) |
| v. | § | March 14, 2013 |
| | § | Opinion by Justice Meier |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in the trial court's judgment. The portion of the March 8, 2012 judgment of conviction and sentence ordering Appellant Lecoreyeon Daseon Taylor to pay costs in the amount of $1,979.50 is modified to reflect that he pay costs in the amount of $257.00. It is ordered that the judgment of the trial court is affirmed as modified.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Bill Meier



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00106-CR

LECOREYEON DASEON TAYLOR                                          APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Lecoreyeon Daseon Taylor of assault–family violence and assessed his punishment at 365 days in jail. The trial court sentenced him accordingly. In two points, Taylor argues that the evidence is insufficient to support both his conviction and the order requiring him to reimburse the county for court-appointed attorney's fees. We will affirm the judgment as modified.

---

[1]*See* Tex. R. App. P. 47.4.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trial court ordered Taylor to pay court costs in the amount of $1,979.50. Taylor contends, and the State agrees, that of that amount, $1,752.50 is to reimburse the county for attorney's fees incurred by his court-appointed trial counsel. In his first point, Taylor argues that the evidence is insufficient to support the order requiring him to pay the attorney's fees because there is no evidence that he had the financial ability to do so.

The code of criminal procedure provides in relevant part as follows:

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay.

2

Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2012). "Thus the defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); *see also* Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2012) ("A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs.").

The trial court found before trial that Taylor was indigent and appointed him trial counsel. After Taylor's conviction, the trial court appointed him appellate counsel and granted his motion for a free reporter's record on appeal. We have reviewed the entire record, and there is no evidence, nor any express or implied finding or determination by the trial court, that Taylor had sufficient financial resources to offset the expense incurred by the county for his court-appointed attorney's fees. We sustain Taylor's first point. *See, e.g.*, *Roberts v. State*, 327 S.W.3d 880, 883–84 (Tex. App.—Beaumont 2010, no pet.) (addressing same issue).

In his second point, Taylor argues that the evidence is insufficient to show that he intentionally, knowingly, or recklessly scratched T.V., the complainant, with his hand.

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1)

3

(West 2011). A person acts recklessly when the person "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c) (West 2011).

Jamie Jones testified that she was working at home on August 24, 2011, when she heard a lot of honking and screaming coming from outside. She looked outside and saw Taylor and Joseph Wilson, neither of whom she knew, in the middle of the street and someone, possibly a female, in a car. Jones saw Wilson "trying to pull" Taylor back from the car, Taylor "breaking free and then going at the car," and Taylor lunging and swinging into the car. This happened— Taylor being pulled away and then returning to the car, swinging into it, at one point inside from his waist up—"quite a few" times.

T.V. testified that she had been in a relationship with Taylor for almost three and a half years. According to T.V., "words [were] exchanged" as she was driving Taylor to Wilson's house on August 24, 2011, Taylor exited the car and walked the remaining distance to Wilson's house, and she followed Taylor there in her car. T.V. honked her car horn repeatedly while parked in front of Wilson's house to get Taylor to come talk to her about a dispute over money, and the two began arguing. T.V. denied that the argument was ever "physical" and claimed that she had pulled Taylor into her vehicle, that she was the aggressor, and that she was not sure if she was scratched on her neck earlier in the day during softball practice or when she pulled Taylor into the vehicle. However, she also acknowledged that Taylor kicked her car door, that his hand made contact with

4

her neck when he reached inside of the car, that she told police that night that Taylor had scratched her, and that she had felt a burning sensation from the scratch on her neck. Looking at several photographs that were taken that night of the scratch on her neck, she also acknowledged that it looked like someone's hand had been around her throat and had pulled on it. T.V. denied that she was assaulted that night, but she agreed that she had told police that she had been assaulted. She also confirmed that Taylor lived with her and her son, that her son considered Taylor to be his father, and that Taylor helped pay bills.

Officer Chris Herring responded to the disturbance and was told by T.V. that she had been involved in a fight with Taylor and that he had scratched her neck. T.V. showed Officer Herring the scratch, which had wet blood on it, indicating that it had occurred recently. T.V. told Officer Herring that the struggle ensued inside of her car when she told Taylor that she was going to call the police and reached for her cell phone. Officer Herring spoke with Taylor, who said that the argument never became physical, and Jones, whose statements were consistent with what T.V. had said. Officer Herring therefore decided to arrest Taylor for assault.

Officer Justin Holman responded to the disturbance after Officer Herring and testified that T.V. said that she was scratched when Taylor entered her car and they struggled.

Wilson testified that Taylor did not touch T.V.; instead, T.V. grabbed Taylor by the shirt, dragged him inside of the car, and hit him in the face about six times.

5

He did not recall pulling Taylor back from T.V.'s car. Wilson confirmed that he had been Taylor's friend for five years.

As the evidence demonstrates, there was conflicting testimony about the confrontation between Taylor and T.V., including whether Taylor scratched T.V.'s neck. But as the trier of fact, the jury had the option to resolve the conflicting testimony in favor of the State and, in weighing the evidence, to believe the evidence that favored the State and disbelieve, or assign less weight to, the evidence that favored Taylor. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman*, 350 S.W.3d at 595. Further, in light of the evidence, the jury could have concluded that by lunging and swinging into T.V.'s car, possibly in an attempt to prevent T.V. from calling the police, Taylor consciously disregarded a substantial and unjustifiable risk that he would scratch T.V.

Accordingly, viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Taylor recklessly scratched T.V. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise*, 364 S.W.3d at 903. We overrule Taylor's second point.

Having sustained Taylor's first point, we modify the portion of his March 8, 2012 judgment of conviction and sentence ordering him to pay costs in the amount of $1,979.50 to reflect that he pay costs in the amount of $227.00. Having overruled Taylor's second point, we affirm the trial court's judgment as modified.

6

                                  BILL MEIER
                                  JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 14, 2013